IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JORGE CASANOVA,

        Plaintiff,

v.                                        CIV 09-1121 MCA/CG

CENTRAL NEW MEXICO CORRECTION
DEPARTMENT, et al.,

        Defendants.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

    This civil rights case is the third filed by Plaintiff concerning his experiences at the Central New Mexico Correctional Facility (CNMCF) in Los Lunas, New Mexico.  *See Casanova v. Romero,* CIV 08-0287 JCH/WDS (hereinafter *"Casanova I-Herrera"*); *Casanova v. Ullibari*, CIV 08-288 BB/CG  (hereinafter *"Casanova II-Black"*); *Casanova v. Romero,* CIV 09-1121 MCA/CG (hereinafter *"Casanova III-Armijo"*).  Plaintiff initiated the latest case with a request to proceed *in forma pauperis,* and presiding District Judge Armijo referred the matter to me for recommended findings and disposition.  *See Docs. 1-3.*

## I.  Request Seeking My Recusal Is Denied

    I also was the referral judge in Plaintiff's second suit.  In his "objections" to Judge Armijo's referral order in this case, Plaintiff recounts that history, and I construe the

objections as a request that I recuse. *See* Doc. 4. I decline to do so.

This not a "close case." *See e.g., Bryce v. Episcopal Church in the Diocese of Colorado,* 298 F.3d 648, 659 (10th Cir. 2002). Disagreement with a judge's rulings is not a basis to recuse. *E.g., United States v. Erickson,* 561 F.3d 1150, 1169 (10th Cir.), *cert. denied,* 120 S. Ct. 173 (2009). I have no personal bias or prejudice toward Plaintiff, nor do I believe that "'a reasonable person, knowing all the relevant facts, would harbor doubts about [my] impartiality.'" *Bryce,* 289 F.3d at 659 (quoting *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987)).

## II.  Factual & Procedural Background

It is well-settled that a court may take judicial notice of its own records. *E.g., New Mexico ex rel. Richardson v. Bureau of Land Management,* 565 F.3d 683, 702 n. 21 (10th Cir. 2009). Plaintiff's submissions in all of three cases tend to be long, rambling, repetitious, and difficult to follow at times. However, all three contain common factual allegations. *Compare Casanova I-Herrera* (Docs. 1, 20, 23, 26), *with Casanova II-Black* (Docs. 1, 20 [a 112-page submission], 25), *with Casanova III-Armijo* (Doc. 1 [a 51-page submission]); *see also id.* at 10-11 (indicating that *Casanova III-Armijo* involves the "same facts" as *Casanova I-Herrera*).

### A.  *Casanova II-Black Was Dismissed Without Prejudice And Is On Appeal*

The first two suits were initiated and filed within days of each other in March 2008, after Plaintiff had been released from prison on February 15, 2008. *See Casanova II–Black* (Doc. 22 at 2) ("Petitioner was released from the custody of the New Mexico Department of Corrections on February 15, 2008); *id.* (Doc. 1 at 1, 6; listing

"LaPasada Alternative House, Inc." as address, signed on 3/18/08); *Casanova I-Herrera* (Doc. 1 at 1, 6; same address, signed on 3/13/08).[1]  The only meaningful distinctions between the two suits were who Plaintiff named as defendant and the specific relief he sought.  Both are devoid of dates for most of the incidents, and center on allegations of his poor health and continual harassment by unspecified prison employees.  Both specifically mention treatment by Correctional Officer Ray Garcia, placement and conditions in segregation, the way strip searches were conducted, and loss of a hearing aid and dentures.

Plaintiff named CNMCF Warden Robert Ulibarri as defendant in *Casanova II-Black,* though Warden Ulibarri did not became warden until October 2006, years after the bulk of Plaintiff's specifically-dated events took place.  Plaintiff named Warden Jose Romero as defendant in *Casanova I-Herrera,* and Warden Romero evidently was the warden sometime prior to October 2006.  *See, e.g.,Cassanova II-Black* (Doc. 22 at 4).  On my recommendation, *Casanova II-Black* was dismissed for failing to state a specific claim that spanned Warden Ulibarri's tenure.  When no objections were filed, presiding District Judge Bruce Black adopted the recommendation and dismissed the action without prejudice. *See id.* at 4-5; *see also id.* (Doc. 23).

Plaintiff filed an appeal in *Cassanova II-Black,* but also filed a motion that Judge Black construed as motion to reconsider.  *See id.* (Docs. 25, 30, 31).  The motion to reconsider indicated that Plaintiff was also bringing suit against Warden Romero but

---

[1]  The Court takes judicial notice that "La Pasada" is a "halfway house" and is located at the street address where Plaintiff was residing at the time.  This Court has utilized the services of La Pasada on innumerable occasions.

had failed to mention him as the result of mental disabilities and the lack of legal assistance.[2]  However, Plaintiff did not request leave to amend and, because he did not cure the lack of specificity regarding Warden Ulibarri, his motion for "reconsideration" was denied.  *See id.* (Doc. 30 at 3).  The appeal *Cassanova II-Black* is still pending.  *See Casanova v. Ulibarri,* #09-2096 (10th Circuit docket sheet as of 1/08/10).

### B. *Casanova I-Herrera* Was Dismissed Without Prejudice On Plaintiff's Request

Meanwhile, *Casanova I-Herrera* was languishing.  It did not move quickly to the service and answer stage mainly because of delays by Plaintiff not getting cure materials to the Court, not keeping the Court informed about his new addresses, and filing needless motions, but also in part due to Magistrate Judge Smith's retirement and reassignment of the case.  By the time *Casanova II-Black* had been dismissed and on appeal for three months, *Casanova I-Herrera* was just beginning the service process.  After another three months passed without service on former Warden Romero, the Court initiated the personal service process, but by that point Plaintiff filed a motion asking the Court to "close the case."  He indicated that because the case was proceeding so slowly, he wanted to file a new one.  *Casanova I-Herrera* (Doc. 28).  District Judge Judith Herrera granted the request, set aside the order for service, and

---

[2]  *See Cassanova II - Black* (Doc. 25 at 2 – "Plaintiff always was exhausted in all the cases and Plaintiff only used those references to show and illustrate how with former Warden Jose Romero and now with Defendant Robert Ulibarri are always the same corruption and impunity.  Whether an error was made, I have been denied access [to] the courts, frustrated or impelled in pursuing a no (sic) frivolous claims because of maybe little inadequacies for show the past and present corruption by both Warden.  Dismissed for failure to meet a technical requirement that Plaintiff could not have known about because of <u>NO</u> legal assistance provided . . . Plaintiff request the need of Counsel because he is a disabled man with severity memory loss, cognitive disorder, bilateral deafness, several difficulty in task of attention and concentration, etc., etc.") (emphasis original).

dismissed the case without prejudice. *Id.* (Doc. 30).

### C. Allegations In Casanova III-Armijo Are Identical To Those In First Two Suits

Plaintiff filed his Complaint in the instant case on November 24, 2009. He seeks damages only, and again names Warden Romero and Officer Garcia as defendants. He sues them in "both capacities individual and official." *See Doc. 1* at 1, 12. He also sues CNMCF itself. *Id.* at 1 ("Because [CNMCF] may be sued as a person, because violated Plaintiff's Rights and should be named as Defendant in my lawsuit.") (original emphasis deleted).

Because he understood that defendants may claim failure "to exhaust . . administrative remedies or by failing to file a grievance within 20 days time period mandated by CD-081000," Plaintiff took care to explain what he did to grieve the incidents and attached documentation for his grievances to his Complaint. *Id.* at 3. Save for two matters in 2007, none of the specific events he describes took place later than October 200*6.* The rest of his assertions are either background, legal argument, conclusory, or do not pertain to the named defendants.

As for his specific allegations, Plaintiff claims that it took two weeks for him to receive grievance forms that he requested in January 2004. *See id.* at 3-4, 15-16. Based on documentation he submitted with his Complaint, he also evidently is complaining about not being able to receive copies of his court documents from prison staff. He specifically complains about the response he received to his March 8, 2007 request for "paperwork for a Federal Lawsuit." *Id.* at 4.[3]

---

[3] *See also Doc. 1* at 17 ("inmate request for legal access" request dated 5/28/04 stating: "I need some copies from my State Appeal, and some legal paper that I will

Officer Garcia is sued because he was the officer who, on "three different days," conduced strip searches of Plaintiff. *Doc. 1* at 2, 9-10. Those searches were conducted on "Sunday 25, Monday 26 and Tuesday 27 in the month of April 2004." *Id.* at 6; *see also id.* at 8-9, 38-45. Plaintiff characterizes the searches as "sexual harassment and sexually intrusive" and impermissible because they were not conducted by medical personnel. *Id.* at 2; *see also id.* at 10, 40..

Plaintiff was housed in the Geriatric Unit of CNMCF while he was incarcerated and using an expensive hearing aid that his wife had purchased. *Id.* at . In June 2005, the "contractor Hearing Masters" took this hearing aid to repair it, and he claims that the contractor never returned it. *Id.* There is no dispute, however, that Plaintiff eventually was given a substitute hearing aid – one that he did not like. *See id.* at 26-27 (December 20, 2005 letter by counsel demanding that his "hearing aid be returned to him repaired, or that DOC replace it with on of equal quality."); *id.* at 35 (10/18/06 letter from Plaintiff to unknown persons dated 10/18/06 asserting: "the scratchy irritating noise in my poor hearing aid persists").

---

send to my attorney"); *id.* at 18 (6/2/04 response stating: "Mr Casanova, your request for legal access assistance does not fall under the legal access policy. We only provide copies for authorized paperwork. . . . You will need to contact your caseworker and request copies from him/her."); *id.* at 19 ("inmate request for legal access" request dated 6/10/04 stating: "I need copies of my paperwork for my grievance #03-03-032 for send to grievance officer and warden."); *id.* at 20 (6/15/04 response stating: "Mr Casanova, your request for legal access assistance does not fall under the legal access policy. We only provide copies for authorized paperwork. . . . You will need to contact your caseworker and request copies from him/her."); *id.* at 21 ("inmate request for legal access" request dated 3/8/07 stating: "Please I want paperwork about Federal Civil Lawsuit"); *id.* at 22 (response dated 3/11/07 stating; "Mr. Casanova, I no longer have access to federal court case details. You will need t o write the Clerk of Court for information on you law suit.").

Plaintiff claims, in conclusory fashion, that in retaliation for his complaints, he was placed "for eleven months at the hospital during 2007 without walk." *Id.* at 9.

## III. Dismissal Is Appropriate Under IFP Statute

Under the *in forma pauperis* statute, "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915 (e)(2). I recommend that this action be dismissed on both grounds.

### *A. As Repetitious*

First, it is well-settled that "repetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious." *McWilliams v. Colorado,* 121 F.3d 573, 574 (10th Cir. 1997) (quotations omitted); *see also, e.g., Wylie v. Ritter,* 292 Fed. App'x 744, 745 (10th Cir. 2008) (same; quoting *McWilliams* and citing *Pullen v. Keesling,* 9 Fed. App'x 882, 883 (10th Cir. 2001); *Childs v. Ortiz,* 223 Fed. App'x 804, 804 (10th Cir. 2007) ("Mr. Childs filed duplicative complaints that were received by the district court four days apart. The two complaints were treated as separately filed actions. The district court dismissed this second complaint as frivolous in light of its contemporaneously filed twin. . . . the district court did not abuse its discretion").

This case is identical to the first two suits, one of which is presently on appeal, and is thus subject to dismissal as being repetitious. That alone is sufficient reason to dismiss, however, there are other alternative reasons to do so as well.

### *B.  Alternatively, For Failure To State A Claim*

1.  Damages Are Not Recoverable Against CNMCF Or Defendants In Their Official Capacities.  The New Mexico Department of Corrections directly operates CNMCF.  *See* http://corrections.state.nm.us/prisons/publicinst.html.  In addition, Section 1983 suits against a New Mexico Department of Corrections warden and correctional officer in their official capacities are actually suits against the state.  As such, damages are not recoverable against the institution or the individual defendants in their official capacities.  Because Plaintiff did not bring any of these actions while incarcerated, he has no claim for prospective injunctive relief, and his parole status is immaterial to the availability of injunctive relief.  *E.g., Tarrant Regional Water Dist. v. Sevenoaks,* 545 F.3d 906, 910-11 (10th Cir. 2008); *Trujillo v. Williams,* 465 F.3d 1210,, 1223-24 (10th Cir. 2006); *McAlpine v. Thompson,* 187 F.3d 1213, 1215-18 (10th Cir. 1999); *Green v. Branson,* 108 F.3d 1296, 1299-1300 (10th Cir.1997).  Thus, the official capacity claims against Warden Romero and Officer Garcia should be dismissed, as well as CNMCF.

2.  The Only Viable Claim Alleging Personal Involvement Are Strip Search Claims.  Plaintiff attempts to hold Warden Romero liable on the basis of "personal involvement" and *respondeat superior* because he was the person to whom Plaintiff directed his grievances:

> Because Defendant Warden Romero directly was involve in the wrong and was aware of the wrong when Plaintiff in person in front of all inmates' unit gave him copes of the grievances, warnings and advices about the wrong, several times, but Defendant didn't do anything to stop of fix it, when there is a duty to do so.

*Doc. 1* at 2.  However, an individual cannot be held liable on a respondeat superior theory:

> Individual liability under 42 U.S.C. § 1983, must be based upon personal participation of the individual in the alleged constitutional violation. *See Foote v. Spiegel,* 118 F.3d 1416, 1423-24 (10th Cir.1997); *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir. 1996). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir.1993).

*Whitington v. Ortiz,* 307 Fed. App'x 179, 190 (10th Cir. 2009).

Here, despite Plaintiff's broad assertions of "direct involvement," it is plain from the rest of the allegations and the documentation that Warden Romero only became "involved" in the allegedly unconstitutional incidents after the fact, due to being the recipient of Plaintiff's grievances. The fact that a warden knows of the inmate's situation is "insufficient to establish the required personal participation" – "the fact that [Plaintiff] sent a grievance or written complaint directly to the warden of a large institution would be insufficient to make the necessary link," *id.* at 192, and there are no unusual facts presented by Plaintiff's claims to find otherwise.

In other words, there is no "causal connection" between inaction on the part of Warden Romero and the decision by the contractor to take the hearing aid for repair, the decision to conduct and manner of conducting the strip searches, the decision that Plaintiff required hospitalization, the fact that copies of legal documents could not be provided, etc. And, save for the strip searches, there are no allegations of direct involvement by Officer Romero for the other incidents, either. *See Poolaw v. Marcantel,* 565 F.3d 721, 732-33 (10th Cir. 2009) ("The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.") (internal quotations and citations omitted); *Smith v. Maschner,* 899 F.2d 940,

9

949-50 (10th Cir. 1990) (to establish claim for retaliation a plaintiff must show that "but for the retaliatory motive, the incidents to which he refers . .. would not have taken place.").

Additionally, as mentioned above, the rest of Plaintiff's assertions are either background, legal argument, conclusory, or do not pertain to the named defendants. Further, according to the grievance he pursued, Plaintiff asked the prison for "paperwork about Federal Civil lawsuit," *Doc. 1* at 21, and a staff member responded "Mr. Casanova, I no longer have access to federal court case details.  You need to write the to Clerk of Court for information on your lawsuit," *id.* at 22.  There is no federal constitutional right that requires a prison to maintain their own copies of the federal suits prisoners file.  Moreover, even if this were a misunderstanding where Plaintiff was asking for a civil rights suit form, *see id.* at 4 ("Plaintiff needs paper for a Federal Civil Lawsuit"), he suffered no injury because he subsequently secured and used those forms to file *Casanova I-Herrera* and *Casanova II-Black.*

Accordingly, Warden Romero should be dismissed, and the only viable individual capacity claim is the strip search claim against Officer Romero.

3.  The Statute of Limitations Bars The Strip Search Claim.   A "complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.  If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock,* 549 U.S. 199, 215 (2007).  There is a three-year statute

of limitations for § 1983 actions in New Mexico.[4]

The Tenth Circuit permits a court to consider the timeliness of an action *sua sponte* when timeliness is clear on the fact of the complaint that the action is barred and there are no meritorious tolling issues, and the plaintiff is given an opportunity to be heard on the issue. *Arroyo v. Starks,* __ F.3d. ___, 2009 WL 4827370 (10th Cir. 12/16/09) (citing *Fratus v. DeLand,* 49 F.3d 673, 674-75 (10th Cir. 1995)); *see also e.g., Garcia v. Hoover,* 223 Fed. App'x 785, 788 (10th Cir. 2007) (dismissal of repetitious and untimely prisoner complaint). These proposed findings will serve as the notice and I will give him ample time to object and to raise issues of tolling, though I note there is no basis for tolling on the face of the record.

Tolling is a matter of state law. *Roberts v. Barreras,* 484 F.3d 1236, 1240-41 (10th Cir. 2007). The *Roberts* panel indicated that under a New Mexico statutory provision, grievance proceedings <u>may</u> toll the federal statute of limitations and assumed, without deciding, that the state law would recognize a prison grievance procedure as a basis for tolling. *See id.* at 1243-44 (emphasis added). Here, however, at the very least, the grievances concerning the April 2004 strip searches themselves were filed in April 2004, *Doc. 1* at 41-43, and Plaintiff asserts that he "never received an answer to his compliant (sic) nor this grievance, *id.* at 37. Thus, according to the face of

---

[4] *E.g., Mondgragon v. Thompson,* 519 F. 3d 1078, 1082 (10th Cir. 2008) ("The statute of limitations for § 1983 claims in New Mexico is three years."); *O'Connor v. St. John's College,* 290 Fed. App'x 137, 140 (10th Cir. 2009) ("§ 1983 claim based on internet monitoring accrued on February 13, 2003, and he failed to sue within three years of that date.") (citing *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1154 (10th Cir. 1998) for the proposition that "an action accrues in a § 1983 case when 'the plaintiff knows or should have known that his or her constitutional rights have been violated'").

Plaintiff's assertions, defendants made the grievance procedure "unavailable" to him. None of the purposes underlying the exhaustion of grievance procedures is furthered when prison officials ignore it and it would undermine the purposes to allow a Plaintiff to use a nonexistent affirmative defense to toll a statute of limitations *ad infinitum.*[5] Furthermore, even if his grievance should be deemed to have invoked the exhaustion procedure for reasonable time, any such period would not have been long enough to save the long-expired statute of limitations in this case.  Indeed, it was long expired when Plaintiff filed his first two suits, much less this one.

New Mexico has a statute that tolls a statute of limitation for "incapacitated persons" and gives them "one year from and after the termination of such incapacity within which to commence said actions."  N.M. Stat. Ann., § 37-1-10 (Michie 2008).  I have found no decision in new Mexico, this District, or the Tenth Circuit that includes incarceration within the meaning of "incapacitated."  In addition, I recognize that Plaintiff mentions he has "severe brain damage" and "mental disabilities."  *See Doc.* 1 at 11.  I have found no decision in New Mexico, this District, or the Tenth Circuit that defines

---

[5]  *Cf., Aquilar-Avellaveda v. Terrell,* 478 F.3d 1223, 1225 (10th Cir. 2007) ("courts also are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials. . . . The facts ordinarily pled in allegations concerning prison conditions frequently will not give a definitive answer as to whether a prisoner has completed his internal grievance process or whether he was thwarted in his attempts to do so.") (internal citation omitted); *Whitington v. Ortiz,* 472 F.3d 804, 807 (10th Cir. 2007) ("The purpose of this exhaustion requirement is to reduce the quantity and improve the quality of prisoner suits by (1) allowing prison officials an opportunity to satisfy the inmate's complaint-thus obviating the need for litigation; (2) filtering out some frivolous claims; and (3) creating an administrative record that facilitates review of cases that are ultimately brought to court. *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002)."); *id.* at 808 ("a prisoner cannot be required to wait indefinitely for a response to his final grievance before he may seek judicial review. That is, when prison officials fail to timely respond to a grievance, the prisoner has exhausted "available" administrative remedies under the PLRA. . . . Because the CDOC did not timely respond to Mr. Whitington's Step 3 grievance, Mr. Whitington effectively exhausted his administrative remedies.") (internal citations omitted).

"incapacitated persons" for the purpose of the tolling statute. However, if indeed he is "incapacitated," the statute of limitations is still tolled, and this action is premature.

Equitable tolling is not available either. Unfortunately, Plaintiff made the decision to request dismissal of *Casanova I-Herrera*. But the Court was under no obligation to advise him of the statue of limitations consequences flowing from that decision. A "'defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure' . . . 'the Constitution [does not] require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course.'" *Pliler v. Ford,* 542 U.S. 225, 231 (2004) (quoting *McKaskle v. Wiggins,* 465 U.S. 168, 183-84 (1984)); *see also, e.g., Salazar v. LeMaster,* 130 Fed. App'x 208, 210 n.2 (10th Cir. 2005). Even assuming that the prior dismissal can somehow be deemed a contributing factor, under New Mexico law, equitable tolling is not available for conduct by third parties that delays a filing.[6]

---

[6] Tolling of a limitations period is normally accomplished by statute. *See* NMSA 1978, §§ 37-1-9 to 37-1-12 (tolling for absence or concealment of a debtor, minority, incapacity, death of claimant, and stay of action pursuant to injunction); *cf. Hardin v. Farris,* 87 N.M. 143, 530 P.2d 407 (Ct. App.1974) (holding that tolling may occur even in absence of statute, if defendant prevented plaintiff from knowing of claim by fraudulently concealing it or failing to disclose it when its existence is hidden from plaintiff). As the *Hardin* case illustrates, some fault on the part of the defendant is usually required to establish a right to non-statutory tolling. *See also Molinar v. City of Carlsbad,* 105 N.M. 628, 735 P.2d 1134 (1987) (conduct of a party may estop it from raising statute of limitations as a defense). We are aware of no authority allowing tolling where, as here, a third party caused the delay in filing."

*City of Roswell v. Chavez,* 108 N.M. 608, 610-611, 775 P.2d 1325, 1327-28 (N.M.App.), *cert. denied,* 108 N.M. 624, 776 P.2d 846 (N.M. 1989); *see also, e.g., Roberts,* 484 F.3d at 1241 ("extraordinary events" under New Mexico law "include **conduct by a defendant** that caused the plaintiff to refrain from filing an action during the applicable period.") (emphasis added).

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1. Plaintiff's motion to proceed *in forma pauperis (Doc. 2)* be DENIED; and

2. This action be dismissed under 28 U.S.C. § 1915(d) as "frivolous" and for failure to state a claim.

UNITED STATES MAGISTRATE JUDGE